IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                          CR. 12-1758 RB

CINDY LEE WESTHOVEN,

    Defendant.

## MOTION TO SUPPRESS EVIDENCE AND STATEMENTS

    COMES NOW the Defendant, Cindy Westhoven, by and through her attorney, Bernadette Sedillo, pursuant to the Fourth and Fifth Amendments of the United States Constitution and Fed. R. Crim. P. 12 (b), and respectfully moves this Court for an Order suppressing from use at trial any physical evidence and statements obtained by the Border Patrol as a result of an unlawful stop and detention of Defendant on April 18, 2012.  In support of this motion, counsel states as follows:

## STATEMENT OF FACTS

    The following alleged facts are derived from the discovery provided to the Defense and through additional investigation:

    1. On April 18, 2012 at approximately 7:45 p.m. Border Patrol Agent Joshua Semmerling was driving southbound on New Mexico Hwy 80 near milepost 4 when he first encountered a white four door Ford F-150 traveling northbound in the opposite direction.

    2. Agent Semmerling noticed a single female occupant with a stiff posture driving the vehicle.

3. Agent Semmerling did not observe any additional occupants due to the dark limo window tint in the back and side windows of the truck. Additionally, it was dark at 7:45 p.m. in April.

4. Agent Semmerling contends that he noticed in passing the vehicle that it had an Arizona license plate. The F-150 does not have a front license plate so Agent Semmerling would have had to observe the rear license plate in the rear view mirror traveling the speed limit of 60 miles per hour.

5. Agent Semmerling noticed that the vehicle was traveling northbound during shift change for the Lordsburg station. Agent Semmerling contends that shift change is often exploited by smugglers because of the lack of heavy Border Patrol presence during that time.

6. Agent Semmerling contends that Highway 80 from Douglas, Arizona to Rodeo, New Mexico is used notoriously by smugglers because of its proximity to the United States/Mexico border, and because it because it circumvents permanent Border Patrol checkpoints on the egress routes north from the United States/Mexico border to places such as Phoenix and Tucson.

7. Agent Semmerling immediately pulled a U-turn and caught up to the F-150 to get a closer look at the vehicle. After Agent Semmerling turned his vehicle around, he contends that the white F-150 appeared as if it was trying to avoid him because it increased its speed and Agent Semmerling had to catch up with it.

8. In order to catch up to the vehicle Agent Semmerling was going in excess of 70 miles per hour in a 60 mile per hour zone. Agent Semmerling further contends that it appeared to him that the F-150 that as he was getting closer to the F-150 the driver hit the brakes, and Agent Semmerling found this to be suspicious.

9. Agent Semmerling got close enough to the F-150 to read the license plate and Agent Semmerling ran a registration check on the Arizona license. The registration came back to a Lawrence Westhoven out of Tucson, Arizona.

10. Agent Semmerling decided to stop the F-150 truck to perform an immigration inspection at 7:54 p.m.

11. Agent Semmerling asked the driver of the F-150, who was later identified as Cindy Westhoven, if she was a United States citizen and she said replied "yes."

12. Agent Semmerling asked Ms. Westhoven where she was coming from and she responded that she had gone to Bisbee and then to Douglas.

13. Agent Semmerling asked her for her identification and Ms. Westhoven handed him her Arizona driver's license.

14. Ms. Westhoven purportedly asked Agent Semmerling why he pulled her over, and asked him if he though she was transporting illegal aliens.

15. Agent Semmerling contends that Ms.Westhoven appeared very nervous to him.

16. Agent Semmerling asked Ms. Westhoven to roll down her back window, which she did. Agent Semmerling then asked Ms. Westhoven if he could search in the back of the vehicle and Ms. Westhoven said "no."

17. After Agent Semmerling had been denied consent to search Ms. Westhoven's vehicle he called K-9 Agent to the stop in order to perform an inspection on the vehicle.

18. Agent Semmerling still had Ms. Westhoven's driver's license and she was not free to leave. Agent Semmerling ordered Ms. Westhoven out of the vehicle. Agent Semmerling contends that at 8:00 p.m. he then read Ms. Westhoven her Miranda while she was standing on the side of the road.

19. The K-9 handler subsequently arrived and purportedly alerted to the vehicle. Upon searching the vehicle the Agents found approximately 47 kilograms of marijuana, and Ms. Westhoven was arrested.

20. Ms. Westhoven was held at the Lordsburg Border Patrol Station over night and was subsequently read her Miranda rights the following morning and she then gave a statement.

## THE FOURTH AMENDMENT PROHIBITS UNREASONABLE SEIZURES

21. The Fourth Amendment of the United States Constitution protects "[t]he right of the people to be secure…against unreasonable searches and seizures." U.S. Const., amend IV. The purpose of this amendment is "to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara v. Municipal Court*, 387 U.S. 523, 528 (1967). A traffic stop by a law enforcement officer violates the reasonableness standard of the Fourth Amendment when there is no reasonable suspicion or probable cause for the stop. *United States v. Valenzuela*, 365 F.3d 892, 896-97 (10th Cir. 2004). Border Patrol agents on patrol are permitted "to stop vehicles only if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion" that the occupants are involved in criminal activity. *United States v. Cheromiah*, 455 F.3d 1216, 1220 (10th Cir. 2006), citing *United States v. Cantu*, 87 F.3d 1118, 1120 (10th Cir. 1996).

22. When determining whether there is reasonable suspicion to stop a car in the border area, agents may consider any number of factors, including:

(1) [The] characteristics of the area in which the vehicle is encountered; (2) the proximity of the area to the border; (3) the usual patterns of traffic on the particular road; (4) the previous experience of the agent with alien traffic; (5) information about recent illegal border crossings in the area; (6) the driver's behavior, including any obvious attempts to evade officers; (7) aspects of the vehicle, such as a station wagon with concealed compartments; and (8) the appearance that the vehicle is heavily loaded.

*United States v. Cheromiah*, 455 F.3d 1216, 1220 (10th Cir.2006) (quoting *United States v. Monsisvais*, 907 F.2d 987, 990 (10th Cir.1990); citing *United States v. Brignoni–Ponce*, 422 U.S. at 884–85, 95 S.Ct. 2574).

23. When evaluating an officer's decision to stop a vehicle, "the totality of the circumstances—the whole picture—must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular

person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

24. Agent Semmerling had no objectively reasonable justification for stopping the F-150 truck that Ms. Westhoven was driving or for believing the occupant of the vehicle was involved in criminal activity. Agent Semmerling made an "immigration" stop simply because he contends the Highway 80 from Douglas, Arizona to Rodeo, New Mexico is used by smugglers because of its proximity to the border and because it circumvents permanent Border Patrol checkpoints. However, the Tenth Circuit Court of Appeals has expressed skepticism of whether contentions by law enforcement that a place is a "source and destination point for illegal aliens" is a factor courts should consider in analyzing reasonable suspicion to stop a vehicle. See *United States v. Madroza–Acosta*, 221 Fed.Appx. 756 at 759 n. 1 (10th Cir.2007). The Tenth Circuit stated that, "[t]o the extent that law enforcement officials seem primed to begin identifying 'known illegal alien communities' this type of evidence appears to be of minimal, if any, evidentiary value." *Id.* See *Reid v. Georgia*, 448 U.S. 438, 441, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980) (stating that conduct or circumstances that "describe a very large category of presumably innocent travelers" is insufficient to constitute reasonable suspicion).

25. Agent Semmerling contends that Ms. Westhoven appeared to first increase her speed as if to place some distance between her and the Agent and then as the Agent got closer, Ms. Westhoven appeared to apply the break. "[A] person's reaction to the presence of law enforcement officers can legitimately trigger suspicion." *United States v. Zambrano*, 76 Fed.Appx. at 850. The Tenth Circuit has stated, however, that it takes "an uncomfortable stretch to believe [an] agent possessed 'a particularized and objective basis for suspecting legal wrongdoing' " based on an individual's "driving ten miles per hour below the posted speed limit[,] .... appear[ing] nervous, looking at [an] agent's car several times in the rear view mirror, ... gripping the steering wheel tightly" while a Border Patrol agent "follow[s] closely behind,"

5

and then failing to acknowledge an agent's vehicle as it passes. *United States v. Zambrano*, 76 Fed.Appx. at 851 (quoting *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (finding reasonable suspicion because, among others things, the vehicle had passed the border without being searched and the agent had intelligence that highway was being used by drug cartels because the Border Patrol checkpoint was closed for construction)).

26. The Fifth Circuit has asserted that "repeatedly looking into a rearview mirror is not suspicious conduct when it is the result of an officer's actions, for instance, if the patrol car is 'tailgating' the vehicle...." *United States v. Vega*, 254 F.3d 70, at *4 (5th Cir.2001) (citing *United States v. Jones*, 149 F.3d 364, 370–71 (5th Cir.1998)).  In *United States v. Jones*, the Fifth Circuit asserted whatever support for establishing reasonable suspicion may come from a driver's swerving because he is monitoring a Border Patrol agent following him is "destroyed" if an agent's conduct induces the driver's reactive behavior. 149 F.3d at 370.  It appears that any alleged suspicious driving in the instant case was caused by the Agent immediately pulling a U-turn upon passing Ms. Westhoven traveling in the opposite direction; speeding up to catch up to her; getting close enough behind her to read her license plate; and following her until pulling her over.  Agent Semmerling cannot induce the alleged behavior and then use the behavior as reasonable suspicion.

## THE DEFENDANT WAS UNLAWFULLY DETAINED

27. Upon stopping Ms. Westhoven for the "immigration" stop, Agent Semmerling quickly dispelled any issues with regard to whether Ms. Westhoven was a U.S. Citizen.  Ms. Westhoven told Agent Semmerling that she was a U.S. Citizen and provided him with her Arizona driver's license.  Agent Semmerling asked Ms. Westhoven to roll down the window in the back of the truck, which she did.  Agent Semmerling was able to dispel that there were no other occupants in the vehicle.  Agent Semmerling asked for consent to search the back of her vehicle and Ms.

Westhoven said "no."  Thus, the detention should have ended at that point as Agent Semmerling had dispelled any immigration issues, which the purported reason for the stop.

28. Instead Agent Semmerling ordered Ms. Westhoven out of her vehicle, maintained custody of her driver's license, and read her Miranda warnings.  Ms. Westhoven was under arrest at that point.  No reasonable person would have believed they were free to leave and Ms. Westhoven was not free to leave.  An arrest, "characterized by highly intrusive or lengthy search or detention," must be supported by probable cause. *Oliver v. Woods*, 209 F.3d 1179, 1185 (10th Cir.2000). See *Tennessee v. Garner*, 471 U.S. 1, 7, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). "Probable cause to arrest exists only when the 'facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.' " *United States v. Valenzuela*, 365 F.3d 892, 896–97 (10th Cir.2004) (quoting *United States v. Edwar*ds, 632 F.3d 633, 639 (10th Cir.2001); citing *Draper v. United States*, 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959)).  Although "[p]robable cause does not require facts sufficient for a finding of guilt ..., it does require more than mere suspicion." *United States v. Morris*, 247 F.3d 1080, 1088 (10th Cir. 2001) (internal quotation marks omitted).

29. In this case, Agent Semmerling did not have facts that would warrant a man of reasonable caution to believe that an offense had been committed.  Agent Semmerling merely contends that Ms. Westhoven was nervous and that she refused consent to search.  However, the Tenth Circuit has "held consistently that nervousness is 'of limited significance' in determining whether reasonable suspicion exists." *United States v. Simpson*, 609 F.3d 1140, 1147 (10th Cir.2010) (quoting *United States v. Williams*, 271 F.3d at 1268 (quoting *United States v. Wald*, 216 F.3d 1222, 1227 (10th Cir.2000))).  It is common for most citizens—"whether innocent or guilty—to exhibit signs of nervousness when confronted by a law enforcement officer." United States v. Wood, 106 F.3d 942, 948 (10th Cir.1997). See *United States v. Santos*, 403 F.3d 1120,

1127 (10th Cir.2005). Thus, nervousness is of limited significance in determining whether reasonable suspicion exists, and certainly doesn't rise to the level of probable cause. It appears that Agent Semmerling summonsed a K-9 Officer merely because Ms. Westhoven refused to consent to a search of her vehicle. However, A refusal to consent to a search cannot form the basis for reasonable suspicion: "it should go without saying that consideration of such a refusal would violate the Fourth Amendment." *United States v. Santos*, 403 F.3d 1120, 1125-26, 2005 WL 768771 (10th Cir. 2005) citing *United States v. Wood*, 106 F.3d 942, 946 (10th Cir.1997); see also *United States v. Dozal*, 173 F.3d 787, 794 (10th Cir.1999).

### ALL EVIDENCE AND STATEMENTS STEMMING FROM AN ILLEGAL STOP AND DETNETION SHOULD BE SUPPRESSED

30. The discovery of the marijuana in the truck and post arrest statements were obtained as a result of the unlawful stop and detention. When evidence is obtained in violation of a person's constitutional rights, the government will be prohibited from using that evidence in a criminal prosecution of that person. See *United States v. Calandra*, 414 U.S. 338, 347, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) ("Under this rule, evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure.") (citations omitted). In addition, a defendant may also suppress any other evidence deemed to be the "fruit of the poisonous tree," because it is evidence which was discovered as a direct result of the unlawful law enforcement activity. *Wong Sun v. U.S.*, 371 U.S. 471, 487-88 (1963); *United States v. Olivares–Rangel*, 458 F.3d 1104, 1108–09 (10th Cir.2006).

31. AUSA Ravi Sinha opposes this motion.

32. Defendant requests an evidentiary hearing on this motion.

WHEREFORE, the Defendant respectfully asks this Court for an evidentiary hearing on her motion to suppress all physical evidence seized and all statements stemming from the above-cited stop.

Respectfully submitted,

Electronically filed 08/16/12
BERNADETTE SEDILLO
Attorney for Cindy Westhoven
P.O. Box 6655
Las Cruces, NM 88006
(575) 541-1644

CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of August 2012, I filed the foregoing electronically through the CM/ECF system, which caused opposing counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

Electronically filed 08/16/12
BERNADETTE SEDILLO

9